IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Wells Fargo Bank, N.A., <br><br> Plaintiff, <br><br> v. <br><br> LoanSnap, Inc., f/k/a DLJ Financial, Inc., <br><br> Defendant. | Case No. 0:23-cv-2626 <br><br> **COMPLAINT** |

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), for its complaint against defendant LoanSnap, Inc., f/k/a DLJ Financial, Inc., ("LoanSnap") alleges as follows:

## Introduction

1. LoanSnap had a "correspondent lender" relationship with Wells Fargo.

2. In general, LoanSnap issued loans either to home buyers purchasing new residences or to homeowners who wish to refinance their residences. Those loans are secured by mortgages on the borrowers' residences.

3. LoanSnap then sold some of the mortgage loans to Wells Fargo.

4. A written agreement governs the terms under which LoanSnap sold mortgage loans to Wells Fargo. The agreement required LoanSnap to: (1) represent and warrant that each mortgage being sold has certain characteristics; (2) repurchase from Wells Fargo any mortgage that does not possess those characteristics; and (3) reimburse Wells Fargo for certain losses, costs, and expenses associated with any repurchased mortgage.

5. LoanSnap violated its representations and warranties by selling to Wells Fargo at least one mortgage loan that did not have the required characteristics.

6. LoanSnap further breached its contractual obligations by refusing to repurchase and/or indemnify Wells Fargo for its losses on this loan and to indemnify Wells Fargo for certain losses, costs, and expenses that Wells Fargo incurred. LoanSnap also refused to pay fees due to Wells Fargo with respect to other transactions under the terms of the parties' contract.

7. Thus, Wells Fargo is suing to enforce LoanSnap's contractual obligations.

## Parties

8. Plaintiff Wells Fargo Bank, N.A., is a national banking association whose articles of association designate its main office as located in Sioux Falls, South Dakota, thus making it a citizen of South Dakota for purposes of diversity jurisdiction.

9. Defendant LoanSnap, Inc., is a California corporation with its principal place of business in Costa Mesa, California, thus making it a citizen of California for purposes of diversity jurisdiction.

## Jurisdiction and Venue

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Wells Fargo and LoanSnap are citizens of different states (South Dakota and California, respectively) and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over LoanSnap because LoanSnap contractually waived any objection to this Court's personal jurisdiction and agreed that any lawsuit between the parties would be pursued in Minnesota.

12. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims asserted in this action occurred in this District. Specifically, Wells Fargo has had substantial operations and personnel in Minnesota at all times relevant to this lawsuit.

## Facts

### A. The Parties Entered into the Loan Purchase Agreement.

13. On or about December 6, 2016, LoanSnap and Wells Fargo Bank, N.A. entered into a Loan Purchase Agreement (the "LPA"). A copy of the LPA is attached hereto as **Exhibit 1**. The LPA states the terms under which LoanSnap may sell residential mortgage loans to Wells Fargo.

14. LoanSnap, Inc., legally changed its name from DLJ Financial, Inc., on April 6, 2018. *See* California Secretary of State Certificate of Amendment of Articles of Incorporation, attached hereto as **Exhibit 2**.

15. Paragraph 1 of the LPA incorporates the terms of the Wells Fargo Funding Seller Guide ("Seller Guide"). The Seller Guide sets forth the representations and warranties that LoanSnap makes to Wells Fargo for every mortgage that LoanSnap sells to Wells Fargo.

16. Together, the LPA and Seller Guide (collectively, the "Contract") form the complete agreement between the parties.

17. In the Contract, LoanSnap agreed that it would sell to Wells Fargo only mortgage loans that met the requirements described in the Seller Guide.

18. Wells Fargo sold the loans that it purchased from LoanSnap to various investors, including Fannie Mae and Freddie Mac, which are government-sponsored enterprises chartered by Congress to keep liquidity flowing to mortgage lenders such as local and national banks, thrifts, credit unions, and other financial institutions.

19. When loans that LoanSnap sold to Wells Fargo, and Wells Fargo subsequently sold to an investor, did not meet the requirements of the purchasing investor, that purchasing investor would require Wells Fargo to repurchase and/or indemnify the investor for its losses on those loans.

20. When those loans were subsequently reviewed by Wells Fargo and found to not meet the requirements described in the Seller Guide between Wells Fargo and LoanSnap (and were therefore ineligible for sale under the Contract), then Wells Fargo, in turn, is entitled to have LoanSnap repurchase and/or indemnify Wells Fargo for its losses on those loans that do not meet the requirements of the Seller Guide.

21. In addition to setting forth LoanSnap's representations and warranties regarding the characteristics of the mortgage loans that LoanSnap sold to Wells Fargo, the Contract also specified remedies for Wells Fargo should LoanSnap's contractual representations or warranties prove untrue with respect to a mortgage loan.

22. In accordance with section 305.03 of the Seller Guide, LoanSnap agreed that it would repurchase any loan that did not satisfy the contractual representations and warranties it had made to Wells Fargo.

23. In accordance with section 305.10 of the Seller Guide, LoanSnap further agreed to indemnify Wells Fargo for any liabilities, costs, and expenses, expressly including attorneys' fees, resulting from LoanSnap's breach of any representation or warranty.

24. In accordance with section 305.10 of the Seller Guide, LoanSnap also expressly agreed to indemnify Wells Fargo for losses resulting from the Real Estate Owned ("REO") process by which Wells Fargo acquires title to a mortgaged property through such means as foreclosure, taking a deed in lieu of foreclosure, abandonment of the property, or other reclamation of the property.

**B.  LoanSnap Breached Its Contractual Representations and Warranties with Regard to the "Alta Loan" It Sold to Wells Fargo.**

25. LoanSnap sold at least one mortgage loan to Wells Fargo that violated LoanSnap's representations and warranties as set forth in the Contract.

26. On or around January 30, 2018, LoanSnap sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 4088) secured by a property in Alta, California (the "Alta Loan"). A copy of the portion of the Loan Purchase Schedule, dated January 30, 2018, reflecting Wells Fargo's purchase of the Alta Loan is attached hereto as **Exhibit 3**.

27. The Alta Loan has an outstanding balance of at least $431,009.75 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 2.875%.

5

28. The loan file for the Alta Loan had a program violation because the borrower had an excessive or unsupported debt-to-income ratio (DTI).

29. The Alta Loan did not meet the requirements of the Seller Guide, and LoanSnap's sale of the Alta Loan constituted a violation of LoanSnap's contractual representations and warranties to Wells Fargo.

30. Wells Fargo sustained a loss as a result of the Alta Loan not meeting the requirements of the Seller Guide.

31. On or about July 14, 2023, Wells Fargo sent an invoice to LoanSnap for the amount that LoanSnap owed to Wells Fargo at that time to repurchase the Alta Loan and/or indemnify Wells Fargo for its loss on the Alta Loan and to pay fees and penalties as specified in the Contract.

32. LoanSnap refused to repurchase the Alta Loan and/or indemnify Wells Fargo for its loss on the Alta Loan and refused to pay fees and penalties as specified in the Contract.

33. The amount that LoanSnap currently owes to Wells Fargo to repurchase the Alta Loan and pay fees and penalties under the Contract is at least $431,009.75.

## COUNT I
### (Breach of Contract—Specific Performance)

34. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

35. LoanSnap breached the Contract when it sold the Alta Loan to Wells Fargo. With respect to the sale of the Alta Loan, LoanSnap violated representations and warranties as set forth in the Seller Guide.

36. The Contract, including but not limited to section 305.03 of the Seller Guide, requires LoanSnap to repurchase the Alta Loan as a consequence of LoanSnap's breach of representations and warranties set forth in the Seller Guide.

37. Wells Fargo notified LoanSnap that LoanSnap had breached representations and warranties for the Alta Loan and demanded that LoanSnap repurchase the loans.

38. To date, LoanSnap has refused to repurchase the Alta Loan.

39. LoanSnap has materially breached the Contract, including section 305 of the Seller Guide, by refusing to honor its obligation to repurchase the Alta Loan.

40. Wells Fargo is entitled to an order requiring LoanSnap to repurchase the Alta Loan.

## COUNT II
**(Breach of Contract—Loan Representations and Warranties)**

41. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

42. LoanSnap breached its representations and warranties as set forth in the Seller Guide with regard to the sale of the Alta Loan. LoanSnap's sale of this loan to Wells Fargo therefore breached the Contract.

43. Wells Fargo has demanded, in accordance with the Contract terms, that LoanSnap repurchase the Alta Loan. LoanSnap has further breached the Contract by refusing to repurchase the loan.

44. Wells Fargo has demanded that LoanSnap pay certain fees and costs, as specified in the Contract, arising from the Alta Loan. LoanSnap has further breached the Contract by failing to pay fees and costs for this loan as specified in the Contract.

45. Wells Fargo has suffered damages as a result of LoanSnap's breaches of the Contract in the amount of at least $431,009.75. This amount includes the unpaid balance, accrued interest, escrow advance, and service-release premium, as applicable, plus other fees and costs, for the Alta Loan.

## COUNT III
### (Contractual Attorneys' Fees)

46. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

47. Under the Contract, LoanSnap agreed to indemnify Wells Fargo for all costs, including attorneys' fees, incurred by Wells Fargo in enforcing its rights under the Contract.

48. As a result of LoanSnap's failure to honor its contractual obligations, Wells Fargo has incurred costs and attorneys' fees to enforce its rights under the Contract.

49. Wells Fargo is entitled to recover the attorneys' fees and related costs that it has incurred and will incur in prosecuting this lawsuit to enforce its rights under the Contract.

**WHEREFORE**, Wells Fargo Bank, N.A., respectfully asks that the Court:

1. Enter an order requiring LoanSnap to repurchase the Alta Loan in accordance with the Contract;

2. Enter judgment in favor of Wells Fargo and against LoanSnap in the amount of all damages, costs, and expenses that Wells Fargo has suffered and will suffer in the future as a result of LoanSnap's breaches of its contractual obligations (an amount currently in excess of $431,009.75), plus all costs and expenses (including attorneys' fees) that Wells Fargo incurs in connection with this litigation, plus pre-judgment interest at the legal rate; and

3. Award any additional relief that the Court deems just and equitable.

Dated: August 25, 2023

**FAEGRE DRINKER BIDDLE & REATH LLP**

/s/ Joelle Groshek
Joelle Groshek (#0398377)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Telephone: (612) 766-7000
Fax: (612) 766-1600
joelle.groshek@faegredrinker.com

and

Lance W. Lange, *pro hac vice*
forthcoming
Iowa Bar No.: AT00004562
801 Grand Avenue, 33rd Floor
Des Moines, IA  50309
Telephone: (515) 447-4725
lance.lange@faegredrinker.com

*Counsel for Plaintiff Wells Fargo Bank, N.A.*